UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| JENNIFER LEE SMITH, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 19-061-DCR |
| ) | |
| V. ) | |
| ) | |
| HARTFORD LIFE AND ACCIDENT ) | **MEMORANDUM OPINION** |
| INSURANCE COMPANY, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The parties have submitted memoranda addressing the applicable standard of review for this action which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). [Record Nos. 35, 36, and 36-1] Plaintiff Jennifer Smith asserts that the Court should conduct a *de novo* review of Defendant Hartford Life and Accident Insurance Company's ("Hartford") denial of her long term disability ("LTD") benefits claim. [Record No. 35] Conversely, Hartford contends that an arbitrary and capricious standard of review is applicable under the facts presented. [Record Nos. 36 and 36-1]

Smith seeks relief pursuant to the ERISA civil enforcement provision section 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B). Pub. L. No. 113-235, Tit. I, § 502(a)(1)(B), 128 Stat. 2793 (2014) (codified as amended at 29 U.S.C. § 1132(a)(1)(B)). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When such authority is granted, the highly deferential

arbitrary and capricious standard of review is appropriate." *Castor v. AT&T Umbrella Benefit Plan No. 3*, 728 Fed. App'x 457, 463 (6th Cir. 2018) (internal citations and quotations omitted).

The pertinent question at this time, however, is not whether Smith's policy accounted for such administrator discretion. The Group Long Term Disability Policy ("Plan") at issue specifies: "The plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the Policy." [Record No. 18, p. 48] Instead, the issue is whether the Court should apply *de novo* review despite Hartford's ostensible discretionary authority as administrator under the Plan.

After careful review of the record, the Court finds that an arbitrary and capricious standard is appropriate to evaluate Hartford's denial of Smith's claim for LTD benefits.

**I.**

Smith has been a resident of Fayette County, Kentucky at all times relevant to this proceeding.[1] [Record No. 1, p. 2] While working at Countrywide Financial Corporation, she enrolled in the company's Plan which was issued by Continental Casualty Company ("Continental"). [Record No. 18, pp. 5-79] Continental initially had discretionary authority to evaluate claims under the Plan. *Id.* at p. 48.

Smith's health deteriorated and she ceased working at Countrywide on January 31, 2001. [Record No. 1, p. 3] She filed a claim for disability benefits two days later. [Record No. 18, p. 156] Continental denied her claim, resulting in protracted litigation and a favorable

---

[1] Hartford dedicates a portion of its memorandum to the argument that California's ban on discretionary standards of review in disability insurance coverage cases is inapplicable because Smith is not a California resident. [Record No. 36-1, pp. 5-7] Smith does not contest this point, and the Court agrees with Hartford.

disposition for Smith on appeal before the United States Court of Appeals for the Sixth Circuit. *See Smith v. Cont'l Cas. Co.*, 450 F.3d 253 (6th Cir. 2006); Record No. 1, p. 4.

By 2007, Hartford had become the administrator and underwriter of the Plan.[2] [Record Nos. 1 and 8]  By letter dated June 8, 2007, the company approved the initial 2001 claim and authorized retroactive as well as prospective LTD benefits payments.  [Record No. 18, pp. 2-3]  Specifically, Hartford acknowledged that "[b]enefits for the LTD claim became payable on 8/2/2001, after the Elimination Period (the end of the [short term disability] payment period.)". *Id.* at p. 2.  Regarding future LTD payments, Hartford noted that "we will make requests to update [Smith's] claim concerning her medical condition(s), its treatment and its functional impact to confirm she remains Disabled as defined by the policy." *Id.* at p. 3.

Hartford conducted periodic evaluations of Smith's "disabled" status over the following ten or more years.  The record notably indicates that Hartford marked interactions with Smith's healthcare providers from 2014 to December 18, 2017, using a single Claim Event I.D. Number: 10840139.  [Record Nos. 18, p. 265 and 18-1, pp. 89, 93, 95, 97, 98, 387] The later 2017 interactions with healthcare providers directly concerned the evaluation that led to the issue in this case: Hartford's April 6, 2018, denial of Smith's claim for LTD benefits. [Record No. 18, pp. 284-90]

Smith appealed the April 6 denial on September 13, 2018, pursuant to the Plan. [Record Nos. 18-1, pp. 1099-1101 and 18-2, pp. 2-10]  The record indicates that Hartford received a facsimile of the appeal on September 13.  [Record No. 18-1, p. 1098]  The company wrote to

---

[2]  The company contends that the standard of review that would have been applicable to Continental under similar circumstances is now applicable to Hartford because it is Continental's successor-in-interest.  [Record No. 36-1, pp. 3-5]  Smith does not contest this issue, and the Court agrees with Hartford.

Smith on November 1, 2018, stating that, pursuant to ERISA, it would extend the appeal review period by forty-five days because it "determined that a comprehensive medical review [w]as necessary of all the medical evidence contained in the claim file." [Record No. 18, p. 298] By letter dated November 2, 2018, Smith objected on the grounds that: (1) Hartford's notice regarding the extension of the appeals period was late under the relevant ERISA-related regulation; and (2) the notice was defective because it did not sufficiently account for "special circumstances" warranting an extension. [Record No. 18-2, pp. 708-09] Hartford rejected the appeal on December 4, 2018, upholding its initial April 6 denial of Smith's benefits. [Record No. 18, pp. 299-303]

Smith filed this action on February 21, 2019, pursuant to section 502(a)(1)(B). [Record No. 1] She claims that she continues to qualify for LTD benefits under the Plan and is entitled to attorneys' fees under 29 U.S.C. § 1132(g)(1). *Id.* at pp. 7-8.

## II.

### A.

Smith argues Hartford's failure to adhere to the 29 C.F.R. § 2560.503-1 "claims procedure" rules for ERISA claims entitles her to *de novo* review. [Record No. 35] The current version of this "claims procedure" regulation specifies that a claimant requesting further administrator review of a benefit determination is entitled to a decision within forty-five days unless the administrator provides notice within that initial forty-five day period that an extension is necessary. 29 C.F.R. § 2560.503-1(i)(1)(i), (3) (2018). "The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review." § 2560.503-1(i)(1)(i).

Smith argues that her administrative appeal triggered § 2560.503-1(*l*)(2) (2018) because Hartford failed to send notice of the extension within the relevant forty-five day period and did not sufficiently specify "special circumstances" that justified such an extension. [Record No. 35, p. 3] Subsection (*l*)(2) states, in relevant part, that: "In the case of a claim for disability benefits, if the [administrator] fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan . . . ." § 2560.503-1(*l*)(2)(i). The claimant may cease participation in the administrative review process in such circumstances, immediately seek ERISA section 502(a) relief in court, and, "the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary." *Id.* Subsection (*l*)(2) also provides narrow exceptions to this "deemed exhausted" rule, *see* § 2560.503-1(*l*)(2)(ii), but the plaintiff contends that Hartford has failed to satisfy these exceptions. [Record No. 35, p. 6] She argues that a *de novo* standard is appropriate under subsection (*l*)(2) when the administrator's "decision does not meet the minimum procedural requirements for processing claims." [Record No. 35, p. 2]

Hartford asserts that subsection (*l*)(2) does not apply because an older version of the regulation governs the plaintiff's claim. [Record No. 36, p. 6] It cites § 2560.503-1(p)(3), which states, "Paragraph[] . . . (l)(2) of this section shall apply to claims for disability benefits filed under a plan after April 1, 2018, in addition to the other paragraphs in this rule applicable to such claims." 29 C.F.R. § 2560.503-1(p)(3). Further, according to Hartford, Smith continued the claim appeal process after the forty-five day period elapsed. [Record No. 36, p. 6] Hartford argues that Smith's actions under the older version of subsection (*l*) warrant

application of an arbitrary and capricious standard of review of its administrative determination. *Id.* at pp. 6-7.

B.

Hartford correctly notes that significantly different versions of § 2560.503-1 potentially apply here. The newer subsection (*l* )(2) (which Smith contends entitles her to *de novo* review) applies, "to claims for disability benefits filed under a plan after April 1, 2018 . . . ." 29 C.F.R. § 2560.503-1(p)(3) (2018). The pre-2018 version of subsection (*l* ) which did not include (*l* )(2) applied to all claims filed on or after January 1, 2002. Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246 (Nov. 21, 2000) (codified at 29 C.F.R. § 2560.503-1 (2002)). Further complicating matters, subsection (*l* ) did not exist prior to the January 1, 2002, effective date. Its closest analogue is the pre-2002 iteration of subsection (h)(4). 29 C.F.R. § 2560.503-1(h)(4) (1999).

The date Smith filed her LTD claim determines which version of the regulation is relevant to this matter. Fortunately, § 2560.503-1 defines "claims for benefits." The post-2002 versions of the regulation state that, "[f]or purposes of this section, a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." § 2560.503-1(e) (2018); § 2560.503-1(e) (2002). Prior to 2002, the regulation similarly stated, "[f]or purposes of this section, a claim is a request for a plan benefit by a participant or beneficiary. A claim is filed when the requirements of a reasonable claim filing procedure of a plan have been met." § 2560.503-1(d) (1999). The United States Court of Appeals for the Sixth Circuit has noted that not all interactions with an administrator constitute new "claims for benefits" after a party files an initial claim. *See Moore v. Metro. Life Ins. Co.*, No. 18-5325, 2019 WL 1499337, at *4 (6th

Cir. January 3, 2019). Instead, subsequent interactions only constitute claims when they are actually new requests for plan benefits. *See id.*

The exact date of Smith's relevant request for benefits is not entirely clear from the parties' briefs or pleadings. They agree that the denial that resulted in this litigation occurred on April 6, 2018. [Record Nos. 1, p. 5 and 8, p. 8] April 6th, however, was the date of the denial, an "adverse benefit determination," rather than the day Smith filed her claim. *See* § 2560.503-1(m)(4) (2002) (including "denial[s], reduction[s], or termination[s] of, or [] failure[s] to provide or make payment (in whole or in part) for, a benefit" in the definition of "adverse benefit determination."). Smith does not explicitly state when she filed the claim that was denied on April 6, 2018, and Hartford vaguely asserts that she filed it before the current version of subsection (*l* ) took effect without actually alleging the date of filing.

Nevertheless, it appears that Hartford finally approved Smith's initial February 2, 2001, LTD benefits claim on June 8, 2007, when it agreed to retroactively and prospectively pay LTD benefits. The June 8, 2007, approval letter acknowledges that "[b]enefits for the LTD claim became payable on 8/2/2001, after the Elimination Period (the end of the [short term disability] payment period.)". [Record No. 18, p. 2]

Hartford also addressed the procedure it would use for evaluating whether it should continue to pay LTD benefits pursuant to that same claim. Its June 8, 2007, letter stated: "we will make requests to update [Smith's] claim concerning her medical condition(s), its treatment and its functional impact to confirm she remains Disabled as defined by the policy." *Id.* at p. 3. Smith grants that Hartford has since interacted with her as well as medical care providers as a part of these claim updates. [Record No. 1, pp. 4-5] Indeed, the company used the same Claim Event I.D. Number, 10840139, to interact with doctors from 2014 to December 18,

2017, when it periodically evaluated Smith's disability. The late 2017 doctor interactions specifically related to the evaluation that led to Smith's April 6, 2018, denial.

This evidence does not distinguish between the initial 2001 claim, the claim that was approved in 2007, and the claim that was denied on April 6, 2018. Instead, it demonstrates what may already be obvious from the fact that this dispute concerns "long term" benefits: Smith's case involves a single claim for LTD benefits that she initiated in 2001 after her health had deteriorated to the extent that she could no longer work. Hartford approved that claim in 2007 after the Sixth Circuit appeal and its assumption of rights and duties under the Plan. The company then reevaluated the claim over an extended period that culminated with the April 6, 2018, denial. Smith may have contested Continental and Hartford's handling of her claim over the past eighteen years, but she has made no new "claim for benefits" for the purposes of § 2560.503-1. Therefore, the version of the regulation that was in effect when she filed the claim on February 2, 2001, § 2560.503-1 (1999), is the version relevant to the present matter.

## C.

Although neither party anticipates or advocates for a standard of review that comports with § 2560.503-1 (1999), the standard must accord with this iteration of the regulation. As noted, this version does not contain a subsection (*l* ). *See* § 2560.503-1 (1999). It does, however, include the following provisions relevant to administrative claim appeals:

> (h)(1)(i) A decision by an appropriate named fiduciary shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review.

(2)  If such an extension of time for review is required because of special circumstances, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension.

(4) The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section.  If the decision on review is not furnished within such time, the claim shall be deemed denied on review.

§ 2560.503-1(h)(1)(i), (2), (4) (1999).

The notice requirements of this subsection look significantly different from those of its post-2002 counterparts, but these differences are immaterial because the Sixth Circuit has found that this version of the regulation has no bearing on the applicable standard of review. In *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988), the court held that while the "deemed denied" language of subsection (h) enables a claimant to immediately bring an action in district court when an administrator fails to comply with the regulation's deadlines, such failure has no effect on the standard of review.  *Id.* at 267.  Later, the Sixth Circuit noted that "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner," but it declined to overturn *Daniel*.  *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n. 3 (6th Cir. 2000).  Thus, *Daniel* is still precedent that governs claims filed before the 2002 effective date of subsection (*l* ).  Failures to comply with the notice requirements of subsection (h) merely enable claimants to immediately file suit in court without exhausting the administrative appeals processes set out in their respective plans. [3]

---

[3]    This Court has consistently found *Daniel* to be binding precedent when parties have cited subsection (*l* ) in cases involving claims filed between 2002 and April 1, 2018.  *Johnson v. Life Ins. Co. of N. Am.*, No. 5: 16-087-DCR, 2017 WL 412632, at *2 (E.D. Ky. January 30, 2017); *Hatfield v. Life Ins. Co. of N. Am.*, No. 5: 14-432-DCR, 2015 WL 5722791, at *3 (E.D. Ky. September 25, 2015); *Van Winkle v. Life Ins. Co. of N. Am.*, 944 F. Supp. 2d 558, 561-63

As a result, the standard of review analysis is straightforward. The Plan ostensibly gives Hartford discretion when rendering benefits decisions, a point that neither party contests. Further, § 2560.503-1 (h) (1999) has no effect on the applicable standard of review. The Court accordingly finds that an arbitrary and capricious standard is appropriate for the review of Hartford's denial of the LTD claim. *Firestone*, 489 U.S. at 115; *Castor*, 728 Fed. App'x at 463.

### III.

Smith also contends that, even if § 2560.503-1 does not entitle her to *de novo* review, the circumstances of this case as well as Hartford's conflict of interest as evaluator and payor of Plan benefits warrant application of a different standard of review. [Record No. 35, p. 7] But the plaintiff recognizes that arbitrary and capricious review in these circumstances requires analysis of an administrator's conflict of interest. *Id.* at p. 7 n. 2 (referencing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111, 115 (2008)). Smith cites to no authority endorsing *de novo* review due to an administrator's conflict of interest, and the Court declines to circumvent precedent requiring arbitrary and capricious review.

---

(E.D. Ky. 2013). Even if Smith had filed her claim for benefits during that period, the regulation would not impact the Court's standard of review determination. *See, e.g., Johnson*, 2017 WL 412632, at *2 (holding that *Daniel* binds the court to find that subsection (*l*) does not affect the standard of review while recognizing that the subsection merely entitles the claimant to bring suit because her administrative remedies are "deemed exhausted.").

The record clearly shows that the current version of subsection (*l*) is inapplicable because the claim, denied on April 6, 2018, was not filed after April 1, 2018. The Court accordingly declines to reach a conclusion on whether the current version of subsection (*l*), which includes (*l*)(2), could require *de novo* review under the facts of Smith's case.

**IV.**

Based on the foregoing analysis, it is hereby

**ORDERED** that Defendant Hartford's memorandum in support of arbitrary and capricious review, docketed as a motion [Record Nos. 36 and 36-1], is **GRANTED**. The Court will apply an arbitrary and capricious standard when it reviews the denial of Smith's claim.

Dated: October 11, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky