UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JENNIFER LEE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 19-061-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| HARTFORD LIFE AND ACCIDENT | ) | **MEMORANDUM OPINION** |
| INSURANCE COMPANY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Jennifer Smith has filed a second motion to compel responses to interrogatories and requests for production served on Defendant Hartford Life Insurance and Accident Insurance Company ("Hartford"). [Record No. 42] Smith's motion also asks the Court to compel the deposition of Renae Fortson. *Id.* Hartford responded to the motion on November 27, 2019, contesting the plaintiff's ability to obtain further discovery responses. [Record No. 43] Smith's reply brief was filed December 11, 2019. [Record No. 44]

The Court has conducted a thorough review of applicable caselaw and finds that supplementary responses to Interrogatory Nos. 2-4 and Document Request Nos. 1 and 5 are appropriate. However, such supplementary responses shall be limited in scope. No further discovery is warranted regarding Interrogatory No. 5, Document Request Nos. 3 and 4, or the request to compel Fortson's deposition. Accordingly, Smith's motion will be granted, in part, and denied, in part.

## I.

Smith enrolled in a Group Long Term Disability Policy ("the Plan") issued by Continental Casualty Insurance ("Continental") while working for Countrywide Financial Corporation ("Countrywide"). [Record No. 18, pp. 5-79] Although Countrywide was technically the "plan administrator," Continental administered and paid claims under the Plan. *Id.* at p. 49.

Smith ceased working for Countrywide in January 2001 due to mounting health problems and filed a claim for disability benefits. [Record Nos. 1, p. 3 and 18, p. 156] After several years of litigation regarding Smith's claim, *see Smith v. Cont'l Cas. Co.*, 450 F.3d 253 (6th Cir. 2006), Hartford inherited Continental's rights and obligations under the Plan. [Record Nos. 1 and 8] Hartford began paying Smith retroactive as well as prospective long-term disability ("LTD") benefits in June 2007. [Record No. 18, pp. 2-3] Fortson, a Senior Ability Analyst at Hartford, denied this same LTD claim on April 6, 2018. *Id.* at pp. 284-90. Smith filed an administrative appeal, which was denied by Hartford Appeal Specialist Debra McGee on December 4, 2018. *Id.* at pp. 299-303. She then filed the present ERISA action on February 21, 2019. [Record No. 1]

Hartford filed the administrative record on June 14, 2019. [Record No. 18] Smith served most of the discovery requests at issue on August 2, 2019. [Record No. 42-2, p. 1] Hartford initially served responses, including objections, on August 30, 2019. [Record No. 30-2] After the Court denied Smith's first motion to compel without prejudice [Record No. 39], the parties conferred and Hartford supplemented its initial discovery responses on November 4, 2019. [Record No. 42-3]

Smith then filed the pending motion, seeking discovery concerning the following issues and their corresponding August 2, 2019 discovery requests:

> (1) information relating to the supervision and monitoring of the claims investigation and the Benefits Administrators making determinations on behalf of The Hartford, *Interrog. Nos. 2 & 4*;
>
> (2) information relating to the method for determining compensation of Benefits Administrators, *Interrog. Nos. 3 & 5*;
>
> (3) policies and procedures relating to: (a) supervision and monitoring of claims investigations and Benefits Administrators; and (b) methods for determining compensation, *Doc. Req. No. 1*;
>
> (4) employment agreements of Benefits Administrators, *Doc. Req. No. 3*;
>
> (5) employee benefits of Benefits Administrators, *Doc. Req. No. 4*; [and]
>
> (6) reports and statistical data regarding claim approvals and denials by the Benefits Administrators, *Doc. Req. No. 5*.

[Record No. 42]

Smith's motion also requests that the Court compel the deposition of Renae Fortson. *Id.* Smith did not notice the deposition prior to the Scheduling Order's August 2, 2019, deadline to serve proposed discovery. [Record Nos. 17, p. 2 and 42-4] Instead, she requested a deposition of Fortson "or, if Ms. Fortson was not the principal decision-maker in the decision to deny Ms. Smith's LTD benefits, the deposition of the individual identified in The Hartford's response to Plaintiff's interrogatory No. 1," in an August 27, 2019 email. [Record No. 42-4]

## II.

It is well-established that, generally, a court reviewing an ERISA claim solely considers the administrative record. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). However, "[t]he district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the

administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id*. Further, "an inherent conflict of interest arises," when a single entity evaluates pending claims for benefits and pays those it approves. *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)). "[T]he mere presence of a conflict of interest is enough to permit discovery beyond the administrative record." *Aliff v. Prudential Ins. Co. of Am.*, No. 5:19-013-DCR, 2019 WL 4197211, at *4 (E.D. Ky. Sept. 4, 2019) (citing *McQueen v. Life Ins. Co. of N. Am.*, 595 F. Supp. 2d 752, 754 (E.D. Ky. 2009)) (applying *Glenn* in the context of discovery). The scope of discovery in such circumstances is necessarily limited to matters related to allegations of bias. *Aliff*, 2019 WL 4197211, at *1; *McQueen*, 595 F. Supp. at 755.

The record evidences, and Hartford concedes, that it administers and pays claims under the Plan. [Record Nos. 8, pp. 3, 6 and 18, p. 49] Smith, therefore, is entitled to some discovery outside the administrative record. Discovery is inappropriate, however, if it would be unduly burdensome or its intrusiveness would outweigh any likely benefits (*i.e.* potential indications of bias). *See*, *e.g.*, *McQueen*, 595 F. Supp. 2d at 756. The Court accordingly addresses the scope of such discovery in light of Smith's specific requests.

### III.

#### A. Interrogatory Nos. 2 and 4

Smith asks that the Court compel "information relating to the supervision and monitoring of the claims investigation and the Benefits Administrators making determinations on behalf of The Hartford," which was sought in Interrogatory Nos. 2 and 4. [Record No. 42-2, pp. 4-6, 42-3, pp. 3-4] Specifically, these interrogatories provide:

> Interrogatory No. 2: Describe the process for supervision and monitoring of [Fortson and McGee] during the performance of a claim investigation, including any review of the individual's investigation prior to the issuance of a denial of benefits.
>
> Interrogatory No. 4: Describe the method for monitoring the method in which [Fortson and McGee] process or pay claims.

[Record No. 42-3, pp. 3-4] The plaintiff argues that while Hartford asserts the administrative record "speaks for itself" and points to a Summary Detail Report's "Termination Recommendation" and "Appeal Analysis–INITIAL" as examples [Record Nos. 18, pp. 321-23, 327 and 43-3, p. 3], the record does not sufficiently explain the processes by which the company monitors and supervises claim evaluators. [Record Nos. 42-2, p. 5 and 44, pp. 2-3]

Hartford voices cogent concerns over the breadth of open-ended discovery relating to supervision and monitoring methods, but both parties appear to agree that discovery of supervision and monitoring methods relating to guidelines and procedures that were "actually consulted" are discoverable. [Record Nos. 42-2, p. 6 and 43, p. 7 (citing *Clark v. Am. Elec. Power Sys. Long Term Disability Plan*, 871 F. Supp. 2d 655, 660 (W.D. Ky. 2012))]. And based on Hartford's allusion to the Termination Recommendation in its objection to Interrogatory No. 2 [Record No. 42-3, p. 4], it seems that such discovery is warranted. The Termination Recommendation is an April 5, 2018 Summary Detail Report entry by Ryan Lipscomb, who appears to indicate that he agrees with Fortson's denial of Smith's claim. [Record No. 18, p. 327] While one can intuit that Lipscomb was reviewing Fortson's determination prior to the issuance of the denial letter, this entry reveals nothing about methods, guidelines, and procedures that Lipscomb or anyone else used to monitor or supervise Fortson and McGee.

The Court agrees that Hartford should provide more detailed descriptions of the company's methods of supervision and monitoring claim investigations and processing. But because Hartford is correct to argue that the relevant interrogatories are overly broad, further discovery shall be limited to any supervision and monitoring methods and procedures that were "actually consulted" by Hartford for the review of Fortson's denial and McGee's appellate determination concerning Smith's claim. *See Clark*, 871 F. Supp. 2d at 660. This narrow class of information will comport with the requirement that outside discovery be limited to requests that can probe bias in a specific case. *See, e.g.*, *McQueen*, 595 F. Supp. 2d at 755.

**B. Interrogatory Nos. 3 and 5**

Smith also seeks "information relating to the method for determining compensation of Benefits Administrators," which was requested in Interrogatory Nos. 3 and 5 [Record No. 42-3, pp. 4-5] Hartford has supplemented its responses to these requests by producing its 2017-2018 Compensation Planning Resource ("Resource"). *Id.* The parties have not submitted the Resource itself, but the plaintiff alleges that it addresses guidelines regarding base pay and bonuses. [Record No. 42-2, p. 6] Smith claims that this document does not fully address the relevant interrogatories which also seek: (i) information concerning the method of determining compensation through employee benefits and stock options (Interrogatory No. 3); and (ii) "the amount of stock in the Hartford or any related Entity" that Fortson or McGee hold, "including through any stock owner plan or retirement plan" (Interrogatory No. 5). [Record Nos. 42-2, pp. 6-7 and 42-3, pp. 4-5]

Courts within the Sixth Circuit have generally recognized the ability of plaintiffs to obtain discovery of "incentive, bonus or reward programs or systems, formal or informal, for any employee(s) involved in any meaningful way in reviewing disability claims." *E.g.*, *Busch*

*v. Hartford Life and Accident Ins. Co.*, No. 5: 10-00111-KKC, 2010 WL 3842367, at *4 (E.D. Ky. Sept. 27, 2010) (quoting *Myers v. Prudential Ins. Co. of America*, 581 F. Supp. 2d 904, 914 (E.D. Tenn. 2008)); *Clark*, 871 F. Supp. at 659; *Hays v. Provident Life and Acc. Ins. Co.*, 623 F. Supp. 2d 840, 844 (E.D. Ky. 2008). The disclosed Resource fits within this class of discoverable information, as it allegedly details the factors for determining Fortson and McGee's base pay and bonuses.

The Court agrees that any similar information regarding stock options and employee benefits not outlined in the Resource should be discoverable. Stock options could be formal or informal incentives, and, depending on the factors involved in determining benefits eligibility, employee benefits could conceivably be framed as informal incentive programs. Hartford's claim that "it does not provide its Ability Analysts or Appeal Specialists with any incentive, bonus, or other special recognition or rewards based in whole or in part upon claims denial or terminations" [Record No. 42-3, p. 4], is insufficient to prevent discovery of such methods. *See Hulst v. Aetna Life Ins. Co.*, No. 5: 12-344-DCR, 2013 U.S. Dist. LEXIS 149426, at *7 (E.D. Ky. Oct. 17, 2013). If the factors for determining stock options and benefits were known to Fortson or McGee, this information would be relevant to probing potential bias in the evaluation of Smith's claim. *Id.* Therefore, Hartford must supplement its response to Interrogatory No. 3 with any previously undisclosed information regarding methods of determining compensation through stock options and employee benefits.

However, Hartford need not supplement its response to Interrogatory No. 5. Smith does not actually cite any caselaw indicating that she is entitled to discovery of the amount of Hartford stock owned by Fortson or McGee. She instead makes her Interrogatory No. 3 argument concerning information for determining stock option and benefits and insinuates that

this entitles her to a more detailed response to Interrogatory No. 5. [Record Nos. 42-2, pp. 6-7 and 44, pp. 5-6]

This Court has previously declined to compel disclosure of the actual amount of bonuses paid to employees. *Hulst*, 2013 U.S. Dist. LEXIS 149426, at *7 (concluding that "factors considered in awarding employee bonuses" are discoverable, but "the amount of any bonus paid to any employee" is not); *see also Busch*, 2010 WL 3842367, at *4 (finding that employee pay records are not discoverable because "requests for such information are unduly burdensome and their intrusiveness outweighs any likely benefit."). The Court likewise refuses to compel overly intrusive discovery of Hartford stock owned by Fortson or McGee, whether it was acquired through employment compensation or otherwise. While information regarding formal or informal incentive or reward programs is discoverable, information disclosing actual payments is not.

### C. Document Request No. 1

Smith moves to compel discovery of policies and procedures pertaining to: "(a) supervision and monitoring of claims investigations and Benefits Administrators; and (b) methods for determining compensation" (Document Request No. 1). [Record No. 42] This request for production directly corresponds to Interrogatory Nos. 2-4. [Record No. 42-3, p. 5]

The Court accordingly finds that production of such documents is appropriate to the extent supplementation of answers to Interrogatory Nos. 2-4 was authorized in Sections III(A) and III(B) of this Order. Hartford shall produce any documents concerning methods of supervision and monitoring claim investigations and processing that were "actually consulted" during Fortson's denial and McGee's appellate review of Smith's claim. Hartford will also produce any documents containing previously undisclosed information regarding factors and

methods involved in determining stock options and employee benefits. [Record No. 42-2, pp. 6-7]

### D. Document Request Nos. 3 and 4

Next, Smith moves the Court to compel discovery of "employment agreements of Benefits Administrators," (*i.e.* Fortson and McGee's employment contracts with Hartford) (Document Request No. 3). [Record Nos. 42 and 42-3, p. 6] She similarly requests "any documents that reflect any employment benefits that [Fortson and McGee] may receive by virtue of their employment by or services performed on behalf of the Hartford" (Document Request No. 4). [Record Nos. 42 and 42-3, p. 6]

To some extent, these requests pursue documents relating to factors and methods involved in determining compensation in the form of salary, bonuses, and benefits. For example, the plaintiff's memorandum in support of her motion indicates that Document Request No. 3 seeks employment agreements insofar as they, "contain incentive bonus, reward programs or systems, or compensation structures." [Record No. 42-2, p. 9] No further discovery is necessary to obtain such information, as either Hartford has accounted for such compensation structure documentation through discovery responses and the Resource, or the Court has ordered its production by compelling discovery relating to Document Request No. 1.

However, these requests are broader and could intrusively probe documents similar to personnel file records, as Hartford contends [Record No. 43, p. 10-12], or records of actual payments to employees. "Contractual connections" between administrators and claim reviewers have been found to be discoverable in the past, but such cases generally involve claims that are reviewed by *third-parties*, rather than employees of the payor. *E.g.*, *Busch*,

2010 WL 3842367, at *4; *Pemberton v. Reliance Standard Life Ins. Co.*, No. 08-86-JBC, 2009 WL 89696, at *3 (E.D. Ky. Jan. 13, 2009). As noted above, Hartford has already produced information and documentation about *employee* compensation and will supplement such discovery in accordance with this Order. The intrusiveness of Document Request Nos. 3 and 4 therefore outweighs any likely benefit. *See Busch*, 2010 WL 3842367, at *4; *see also Hulst*, 2013 U.S. Dist. LEXIS 149426, at *6-7. The Court declines to compel discovery for Document Request Nos. 3 and 4.

### E. Document Request No. 5

Smith seeks discovery pertaining to one final August 2, 2019 document request concerning "reports and statistical data regarding claim approvals and denials" (Document Request No. 5). [Record No. 42 and 42-3, p. 7] Specifically, this request states: "[p]roduce all reports prepared for the previous 5 years in any way containing data regarding the denial or approval of claims by [Fortson and McGee]." [Record No. 42-3, p. 7]

The parties contest whether production of such data would be unduly burdensome. Hartford has submitted an affidavit from Adam Garcia, the company's Director of Group Insurance Claims. [Record No. 43-4] Garcia estimates that compliance with this document request would take 3,880 hours and cost in excess of $55,000.00. *Id.* at p. 4. Smith contends the costs of such discovery would not be disproportionate to the high valuation of her case. [Record No. 42-2, pp. 11-12] She also argues that courts tend to focus on "the duration of the period from which the requested records are sought, and . . . the specific reviewers for which claims data are sought" when addressing statistical data request proportionality. [Record No. 44, pp. 7-8] The plaintiff cites *Brainard v. Liberty Life Assur. Co. of Boston*, No. 6:14-110-DCR, 2014 WL 7405798, at *1 (E.D. Ky. Dec. 30, 2014), to demonstrate that the Court has

rejected arguments that production of "statistical data" is unduly burdensome in the past. [Record No. 42-2, p. 11]

But whether a discovery request is unduly burdensome depends on the nature of the request as well as the factual circumstances of a case. Here, the relevant document request essentially asks Hartford to troll through *all* files concerning Fortson and McGee's handling of claims over the past five years and produce any documents that contain data relating to approval or denial of claims. Hartford has stated that this exercise will cost over $55,000.00, and while Smith may be correct that her case is potentially worth significantly more than that amount, the request is overly broad and unduly burdensome as written.

Still, the Court has previously found statistical data discovery to be "'reasonably calculated' to lead to discoverable evidence showing a history of bias" and will accordingly compel discovery relating to Document Request No. 5 in a narrower sense. *E.g.*, *Hatfield v. Life Ins. Co. of N. Am.*, No. 5: 14-432-DCR, 2015 WL 5722791, at *4 (E.D. Ky. Sept. 29, 2015). Hartford will produce any *existing* documents that actually aggregate or quantify the outcomes of Fortson and McGee's handling of claims over any portion of the past five years. Although Hartford will undoubtedly have to review its files, this exercise will not entail an open-ended, intensive, and costly analysis of all documents that may contain data relating to these employees' approval or denial of claims.

Smith argues, and the Court agrees, that an administrator's failure to maintain statistical data records does not preclude a plaintiff from obtaining such information. [Record No. 44, p. 9; *see Aliff*, 2019 WL 4197211, at *5] But this point is only relevant in cases where plaintiffs seek to compel responses to interrogatories that probe the number of times claim reviewers have reached certain claim determinations. *E.g.*, *Aliff*, 2019 WL 4197211, at *2-5 (compelling

responses to interrogatories that requested the "number of medical opinions [] medical reviewer[s]" performed for the administrator and the number of times those opinions supported the administrator's ultimate decisions to deny claims); *Brainard*, 2014 WL 7405798, at *1 (addressing interrogatories that asked for the number of times specific doctors were retained to review claims and the number of times each doctor determined whether claimants were disabled or not disabled). Because Document Request No. 5 is a *document request* and asks Hartford to "[p]roduce all reports prepared for the previous 5 years," the Court limits production to documents that are in existence. *See Aliff*, 2019 WL 4197211, at *5 ("Clearly, Prudential cannot be compelled to disclose documents of which it does not have possession, custody, or control.").

### F. Deposition of Renae Fortson

Finally, Smith seeks to compel the deposition of Renae Fortson, the Senior Ability Analyst for Hartford, who was ultimately responsible for the April 6, 2018 denial of her claim for LTD benefits. [Record No. 42 and 42-2, pp. 12-13] If no procedural issues existed, Smith would appear to have a good argument for deposing the analyst as long as such a deposition would exclusively probe bias. *See, e.g.*, *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 418-19 (W.D. Ky. 2015) (granting a motion to compel a deposition in "an ERISA case where the Plaintiff alleges an inherent conflict of interest," and compiling cases).

But Smith faces a procedural obstacle. As Hartford notes, the Scheduling Order [Record No. 17] set an August 2, 2019, deadline for serving requests for discovery. [Record Nos. 42-5 and 43, p. 21] Smith's counsel submitted the request twenty-five days late in an August 27, 2019 email. [Record No. 42-4] She now contends she could not specifically notice a deposition because she could only assume, but not confirm, that Fortson was responsible for

the denial of her benefits without further confirmation from Hartford. [Record No. 42-2, pp. 12-13] Additionally, she argues the Scheduling Order did not impose a deadline for completion of discovery, and she submitted the request prior to its date for Hartford to object to discovery requests. *Id.*

Smith's arguments are unpersuasive for several reasons. First, the administrative record filed on June 14, 2019 is replete with documents signed by Fortson. [Record No. 18] She communicated with Smith's former counsel, referred to herself as "your Analyst," and signed the April 6, 2018 denial letter. *Id.* at pp. 251, 264, 276, 284-90. And when plaintiffs in ERISA actions seek to depose employees of payor claim administrators, they often request depositions of signatories on claim denial letters. *E.g.*, *Blackwell v. Liberty Life Assurance Co.*, No. 3: 15-cv-376-DJH, 2016 WL 3004568, at *1 n. 1 (W.D. Ky. May 20, 2016) (noting that the plaintiff sought to depose the signatories on the initial denial letter and the administrative appeal denial letter); *Davis v. Hartford Life and Accident Ins. Co.*, No. 3: 14-cv-00507-TBR, 2015 WL 7571905, at *12 (W.D. Ky. Nov. 24, 2015) ("Davis has requested that Hartford make available the two employees who signed his denial letters . . . ."). Smith was a logical choice for a deposition based on the administrative record, and the caselaw indicates that such a request is not uncommon.

Further, the Federal Rules of Civil Procedure account for Smith's uncertainty regarding the proper deponent. Rule 30(b)(1) states that a party must notice a deposition and disclose the deponent's name, but "if the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs." Fed. R. Civ. P. 30(b)(1). Smith could have adequately noticed the deposition on or

before August 2, 2019, with a general description of the deponent as the individual primarily responsible for her claim's denial.

Finally, the Scheduling Order clearly contemplated serving *all* discovery requests by August 2, 2019. [Record No. 17] It may be true that the Order does not specify a close of discovery date, but that does not excuse the fact that Smith did not comply with her deadline.[1] And seeing as Hartford did not respond to the prior discovery requests until August 30, 2019, Smith had no more information regarding individuals responsible for denying her claim on August 27 than she did on August 2. Her counsel could have sent the same email twenty-five days earlier.

Smith failed to comply with the Scheduling Order, and modification of that Order at this time would require a showing of good cause. Fed. R. Civ. P. 16(b)(4). "District courts have broad discretion under the rules of civil procedure to manage the discovery process and control their dockets." *Marie v. Am. Red Cross*, 771, F.3d 344, 366 (6th Cir. 2014). A court considers several factors in when determining whether good cause has been shown, including:

> (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests.

*Dowling v. Cleveland Clinic Foundation*, 593 F.3d 472, 478 (6th Cir. 2010). However, "[t]he overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery." *Id.*

---

[1] Smith should also realize that the Scheduling Order [Record No. 17] does not set a close of discovery date because the Court anticipates protracted discovery disputes, like the one addressed in this Order, in ERISA actions where the same entity administers and pays claims.

Smith was not diligent in pursuing Fortson's deposition. The administrative record was filed on June 14, 2019, and it contains many documents signed by Fortson, including correspondence between the analyst, Smith, and Smith's prior counsel. Fortson was the signatory on the claim denial letter, and it is not uncommon for ERISA plaintiffs to attempt to depose such claim evaluators. Smith had the same information regarding the identity of her claim's evaluators on August 27, 2019, as she had on August 2, 2019. Her only explanation for failing to comply with the deadline was uncertainty as to the principal decision-maker's identity, but she could have made the same request earlier under Rule 30(b)(1).

Smith had ample notice of Fortson's importance to her claim but failed to serve a timely request for a deposition. Therefore, the Court denies her request to compel Fortson's deposition.

## IV.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The plaintiff's motion to compel [Record No. 42] is **GRANTED**, in part, and **DENIED**, in part.

2. The defendant shall supplement its discovery responses to Interrogatory Nos. 2-4 and Document Request Nos. 1 and 5 in a manner consistent with the analysis above.

3. The May 20, 2019 Scheduling Order [Record No. 17] and October 25, 2019 Order extending deadlines [Record No. 41] are **AMENDED** as follows:

    a. The parties have until **January 31, 2020**, to complete discovery in accordance with this Order.

b. The parties are directed to file motions for judgment on or before **Friday, February 28, 2020**. Responses are due within **thirty (30) days** after the motions for judgment are filed. Replies are due within **fifteen (15) days** after the parties file response briefs.

Dated: December 13, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky